1

2

3

4

5                           UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    FORTE CAPITAL PARTNERS, LLC,              No. C-07-1237 EMC

9                    Plaintiff,                **ORDER DENYING TRIAL &**
                                               **TECHNOLOGY LAW GROUP'S**
10          v.                                 **MOTION TO ENFORCE EQUITABLE**
                                               **LIEN; AND DENYING TRIAL &**
11   HARRIS CRAMER, LLP, *et al.*,             **TECHNOLOGY LAW GROUP'S**
                                               **MOTION TO STRIKE**
12                   Defendants.
     _____/         **(Docket Nos. 273, 294)**
13

14

15          Plaintiff Forte Capital Partners, LLC and Defendants have settled the instant action. *See*

16   Docket No. 253 (minutes, filed on 3/13/2009).  Currently pending before the Court is a dispute

17   between Forte and its former counsel, Trial & Technology Law Group ("TTLG").  TTLG argues

18   that it is entitled to an equitable lien on a portion of the settlement proceeds.  Having considered

19   Forte and TTLG's briefs and accompanying submissions, as well as the oral argument of counsel

20   and all other evidence of record, the Court hereby **DENIES** TTLG's motion for an equitable lien.

21   The Court also **DENIES** TTLG's motion to strike.

22                    **I.    FACTUAL & PROCEDURAL BACKGROUND**

23          The parties do not dispute the following facts:

24          (1)    On or about June 27, 2007, Forte and TTLG reached an agreement that "[u]npaid fees

25   and expenses at the time of recovery [would] be paid from [the] recovery."  Spanner Decl., Ex. A (e-

26   mail exchange, dated 6/27/2007, between Mr. Spanner and Mr. McKelvey).  That agreement was

27   formally memorialized in the engagement letter which provided that "[f]ee and cost payments shall

28

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    be reimbursed from the Recovery first."  McKelvey Decl., Ex. H (engagement letter, dated 9/14/2007).

2            (2)      As of date, Forte has not paid all costs owed to vendors (excluding any costs

3    advanced by TTLG).[1]

4            (3)      As of date, Forte has not paid all fees owed to TTLG (excluding any costs advanced

5    by TTLG).[2]

6            In it opening motion, TTLG did not make clear how much fees and costs were allegedly

7    unpaid.  At best, it claimed that vendors are stilled owed $63,302.  *See* Nomikos Decl. ¶ 5.  TTLG

8    also claimed that, as of December 31, 2008, Forte's past due balance was $315,815, *see* Spanner

9    Decl. ¶ 6, but it is not clear whether this past due balance consisted of only fees or both fees and

10   costs.  After Forte pointed out this problem, TTLG in its reply brief claimed for the first time that

11   Forte owed not only the $63,302 identified above but also another $371,689.39.  This sum, all owed

12   to TTLG, consists of $304,042.24 in fees, $17,295.57 in interest, and $50,351.58 in costs advanced

13   by TTLG.  *See* Supp. Nomikos Decl. ¶¶ 6-7.

14                            **II.    DISCUSSION**

15   A.      TTLG's Motion to Strike

16           TTLG has moved to strike portions of Forte's opposition to the lien motion and the

17   supporting Wilson declaration on the basis that they contain evidence submitted in violation of

18   Federal Rule of Evidence 408.  The motion is denied.  The claim that was disputed as to validity or

19   amount was the claim asserted by Forte against the various defendants.  That claim has now been

20   settled.  The only remaining dispute is a matter ancillary to the lawsuit -- a dispute about fees and

21   costs between Forte and its former counsel.  There is nothing to indicate that Rule 408 was intended

22   to extend to such a situation.  Even if Rule 408 could extend to such a situation, the communications

23   at issue, as argued by Forte, did not take place in the context of settlement discussions.

24

25

26   _____

27          [1] Forte does not dispute the fact that vendors are still owed; it simply disputes the amount owed.

28          [2]  As above, Forte does not dispute the fact that TTLG has not been paid all of its fees; Forte
     seems to dispute, however, the amount owed.

**United States District Court**
For the Northern District of California

B.     Costs Owed to Vendors

At the hearing on TTLG's lien motion, Forte stipulated that it would pay the costs that were still unpaid with respect to vendors (not any costs already advanced by TTLG).  Accordingly, the Court ordered the parties to meet and confer to determine the exact amount of costs still owed.  Once the parties reach agreement as to amount, then the amount shall be promptly paid by Forte.

In light of Forte's stipulation, the issue of whether there should be an equitable lien with respect to these costs is moot.

C.     Equitable Lien re Fees and Costs Owed to TTLG

The final issue for the Court is whether there should be an equitable lien with respect to fees and costs still owed TTLG.  The parties agree that the fees being sought by TTLG are based on hours worked by TTLG (*i.e.*, they do not represent in whole or part a contingency fee).

Forte argues that the lien being sought by TTLG is invalid because TTLG failed to comply with California ethical rules.  In support of this argument, Forte cites *Fletcher v. Davis*, 33 Cal. 4th 61 (2004).  In *Fletcher*, a company hired an attorney to represent it in a case in which it was the defendant and to institute an affirmative claim against the plaintiff in the case.  In lieu of a cash retainer, the company agreed to grant the attorney "a lien on any judgment or settlement in its litigation." *Id.* at 64.  Before filing the complaint, the attorney sent the company a memo setting forth his understanding of the terms of the oral retainer agreement.  The company's president represented that he would sign a written retainer agreement but never did.  *See id.*

Subsequently, the company fired the attorney.  The company hired a second attorney and ultimately prevailed in its affirmative claim.  *See id.* at 65.  The issue was whether the first attorney was entitled to any of the judgment obtained.  The attorney claimed that he had a lien on the judgment based on the oral retainer agreement.  The attorney's claim was challenged by persons to whom the judgment funds had been disbursed.  (The company does not appear to made any challenge.)

The California Supreme Court rejected the attorney's position.  It explained that an attorney's lien, or charging lien, is a lien "upon the fund or judgment which he has recovered for his compensation as attorney in recovering the fund or judgment." *Id.* at 66 (internal quotation marks

3

United States District Court

For the Northern District of California

1    omitted).  In short, an attorney's lien "is a security interest in the proceeds of the litigation."  *Id.* at

2    67 (internal quotation marks and emphasis omitted).

3              In most jurisdictions, a charging lien is established by
         operation of law in favor of an attorney to satisfy attorney fees and
4        expenses out of the proceeds of a prospective judgment.  But in
         California, with a few exceptions not pertinent here, an attorney's lien
5        is created only by contract. . . . [A]n attorney's lien is not created by
         the mere fact that an attorney has performed services in a case.

6

7    *Id.* at 66.

8              In the case under consideration, the attorney's lien was not valid because the attorney had

9    failed to comply with California Rule of Professional Conduct 3-300, which requires a written

10   agreement -- not simply an oral one.[3]  The court underscored that Rule 3-300 was applicable because

11   an attorney's lien is properly characterized as being a security interest that is adverse to a client.  *See*

12   *id.* at 69 ("[A] charging lien grants the attorney consider authority to detain all or part of the client's

13   recovery whenever a dispute arises over the lien's existence or its scope.  That would

14   unquestionably be detrimental to the client.").

15             In the instant case, TTLG does not dispute that it did not comply with Rule 3-300.  Even if

16   TTLG had made such an argument, the Court would reject it.  Although, here, there was a written --

17   and not just an oral -- retainer agreement between TTLG and Forte, there is no evidence that, at the

18   _____

19             [3] The rule states as follows:

20             An attorney shall not . . . knowingly acquire an ownership, possessory,
         security, or other pecuniary interest adverse to a client, unless each of the
21       following requirements has been satisfied:

22       (A)    The transaction or acquisition and its terms are fair and
         reasonable to the client and are fully disclosed and transmitted in writing
23       to the client in a manner which should reasonably have been understood
         by the client; and
24

25       (B)    The client is advised in writing that the client may seek the advice
         of an independent lawyer of the client's choice and is given a reasonable
26       opportunity to seek that advice; and

27       (C)    The client thereafter consents in writing to the terms of the
         transaction or the terms of the acquisition.

28   Cal. R. Prof. Conduct 3-300.

United States District Court

For the Northern District of California

1   time of the agreement, Forte was ever advised in writing that it could seek the advice of an

2   independent lawyer of its choice regarding the issue of an attorney's lien.  *See* Cal. R. Prof. Conduct

3   3-300(b).  It was not until the time of the settlement that TTLG first advised Forte to get the advice

4   of independent counsel.[4]  *See* McKelvey Decl., Ex. Q (e-mail, dated 4/2/09, from Mr. Spanner to

5   Mr. McKelvey) ("The question that arises from the existence of a security agreement [with third

6   parties who gave Forte capital to fund the case] is whether it has any effect on your ability to make

7   one of the representations of the settlement agreement to the effect that there are no competing liens

8   on the settlements funds. . . . [Y]ou would be much better counselled by someone else who practices

9   in [the UCC] field every day.  I also should not be the person to advise you on this matter in case it

10  turns out I might have a personal stake in what the answer might be.").

11          TTLG does argue, however, that its failure to comply with Rule 3-300 is irrelevant because it

12  is not seeking an attorney's lien, which arises from a contract, but rather an equitable lien.  In

13  support of this position, TTLG relies on *County of Los Angeles v. Construction Laborers Trust*

14  *Funds for Southern California Administrative Co.*, 137 Cal. App. 4th 410 (2006), and the Rutter

15  Group treatise on professional responsibility.  *See* Rutter Group, Prof. Resp. ¶ 5:778.2.

16          The Court acknowledges that *County of Los Angeles* lends support to TTLG's position.  *See*

17  *County of Los Angeles*, 137 Cal. App. 4th at 416 ("agree[ing] that an *attorney's* lien is created by

18  contract or by implication" but stating that "[t]his case . . . calls for the imposition of an *equitable*

19  lien" and, "[w]hile . . . a contractual relationship may play a role in the imposition of an equitable

20  lien, such a lien is not created by contract, express or implied") (emphasis in original).  But the case

21  is of limited value to TTLG because the state court did not address the California Supreme Court's

22  ruling in *Fletcher*, nor did it otherwise opine on the applicability of Rule 3-300.  Indeed, as Forte

23  pointed out at the hearing, the state court arguably had no occasion to entertain the applicability of

24  the rule because, in *County of Los Angeles*, it was not the client who was challenging the attorney's

25  claim to a part of the judgment proceeds but a competing creditor.

26  ────────────────────

27          [4] It was at this point that current counsel for Forte entered the picture.  *See, e.g.*, Spanner Decl.,
    Ex. V (e-mail, dated 4/7/2009, from Mr. Wilson to Mr. McKelvey) (proposing language to use in the
28  settlement agreement regarding the security agreement with third parties).

United States District Court

For the Northern District of California

1    Moreover, *County of Los Angeles*'s characterization of an attorney's lien as something

2  different and distinct from an equitable lien is not well grounded.  Most state courts, including the

3  California Supreme Court, have characterized an attorney's lien as being equitable in nature, even

4  though founded upon a contract.  *See, e.g. Isrin v. Superior Court of Los Angeles County*, 63 Cal. 2d

5  153, 158-59 (1965) ("[T]he attorney's lien is 'an equitable right to have the fees and costs due to

6  him for services in a suit secured to him out of the judgment or recovery in the particular action, the

7  attorney to the extent of such services being regarded as an equitable assignee of the judgment.  It is

8  based, as in the case of a lien proper, on the natural equity that a party should not be allowed to

9  appropriate the whole of a judgment in his favor without paying for the services of his attorney in

10  obtaining such judgment."); *Epstein v. Abrams*, 57 Cal. App. 4th 1159, 1169 (1997) ("'It is settled in

11  California that an attorney's lien . . . may be created by contract[]; . . . [is] a charging lien; . . .

12  constitut[es] an equitable assignment pro tanto of the client's claim and his right to recover thereon

13  as security; . . . vest[s] in the attorney an equitable interest in the client's recovery as security; or,

14  more correctly stated, . . . entitl[es] the attorney to any available equitable remedy necessary . . . .'").

15    As for TTLG's reliance on the Rutter Group treatise, the Court notes that it is only a treatise,

16  and not binding authority, and, in any event, the treatise bases its conclusions on *County of Los*

17  *Angeles*, which is problematic for the reasons stated above.

18    Even if *County of Los Angeles* properly made a distinction between an attorney's lien and an

19  equitable lien, the Court does not agree with TTLG that Rule 3-300 is therefore inapplicable.  The

20  Court concludes that whether the rule is applicable does not turn on what kind of lien is being

21  sought.  What is important is whether an attorney knowingly acquires a security or other pecuniary

22  interest adverse to the client; if so, then the requirements of the rule which are meant to provide

23  notice and protection to the client are triggered.  It is the adverse nature of the client's and attorney's

24  interests, not the distinction between the contractual or equitable nature of the lien that animates

25  Rule 3-300.  In the instant case, there is no real dispute that the asserted lien here is adverse to the

26  client as it was in *Fletcher*.  TTLG seeks to assert a security interest in the judgment proceeds

27  adverse to Forte.  Given these circumstances, the Court concludes that Rule 3-300 is applicable and

28  that, because of TTLG's failure to comply with the rule, TTLG's lien motion should be denied.

**II.   <u>CONCLUSION</u>**

For the foregoing reasons, TTLG's motion to enforce an equitable lien and its motion to strike are both denied.  The Court notes that denial of the lien does not necessarily bar a suit seeking recovery of fees. *Cf. Huskinson & Brown v. Wolf*, 32 Cal. 4th 453, 463 (2004) (noting that, "[w]here services are rendered under a contractual compensation arrangement that is unenforceable as against public policy, but the subject services are not otherwise prohibited, quantum meruit may be allowed").

This order disposes of Docket Nos. 273 and 294.


IT IS SO ORDERED.


Dated:  July 21, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**
For the Northern District of California

7